UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
(White Plains)

-------------------------------------------------x
:
THE INCENTIVE GROUP, INC.                 :        CIVIL ACTION NO.:
:
v.                                        :
:        JURY TRIAL DEMANDED
USA VAPE LAB,                             :
USA VAPE HARDWARE, LLC d/b/a              :
USA VAPE LAB, THE SCHWARTZ                :
E LIQUID d/b/a USA VAPE LAB,              :
and HUY NGUYEN                            :
:        AUGUST 9, 2018
-------------------------------------------------x

## COMPLAINT

Plaintiff The Incentive Group, Inc. ("TIG"), as and for its Complaint, alleges as follows:

### Nature of the Action

1. This lawsuit is the culmination of the Plaintiff's efforts to obtain payment of an agreed-upon contractual fee from the Defendants. The parties entered into a 3-year agreement whereby the Plaintiff agreed to create and administer a business-to-business loyalty program for the Defendants, manufacturers of e-liquids. The Defendants had budgeted $6-$10 million to be given out as rewards to sales representatives based upon their sales of the Defendants' products. However, shortly after the program launched, the Defendants directed the Plaintiff to "freeze" all work and canceled the agreement. In the agreement, the Defendants had established a formula for payment of an agreed-upon fee in the event that they canceled the agreement early. Having done nothing wrong and after extensive efforts to create and launch the loyalty program, the Plaintiff sought payment from the Defendants, who refused. The Defendants have reneged on

their contractual obligations, have taken advantage of the Plaintiff's efforts, and have completely ignored the facts that they themselves established the budget for the program, they projected the number of participants, and they established the agreed-upon fee (based on their own calculations). To make matters worse, the Defendants have carefully tried to shield themselves from liability by using a purported trade name, "USA Vape Lab," by failing to disclose any corporate entity, and by having their "owner/CEO" execute the agreement. Accordingly, not only should the corporate entities behind USA Vape Lab be held responsible under the parties' agreement, but also, the individual who executed the agreement should be held personally liable.

### The Parties

2.  Plaintiff The Incentive Group, Inc. ("TIG") is a corporation duly formed and organized under the laws of New York with its principal place of business at 399 Knollwood Road, White Plains, New York 10603.

3.  TIG specializes in business-to-business customer loyalty programs. TIG has been operating for 30 years and its clients include many well-known brands in a number of industries. TIG develops, designs and implements business-to-business (B2B) customer loyalty programs and manages and fulfills customer rewards.

4.  Upon information and belief, defendant USA Vape Lab is an entity doing business in the State of California with its principal place of business at 15572 Commerce Lane, Huntington Beach, California 92649 or 7351 Garden Grove Blvd., Suite A, Garden Grove, CA 92841. Upon information and belief, USA Vape Lab is owned and operated by defendants USA Vape Hardware, LLC, The Schwartz E Liquid and Huy Nguyen.

5.  USA Vape Lab is a leading manufacturer and flavor designer of e-liquids for electronic cigarettes (e-cigarettes). USA Vape Lab produces the best-selling premium e-liquid

2

on the market named Naked 100. According to USA Vape Lab's General Certificate of Conformity the nicotine levels in its products range from 0.0% to 5.0%

6.      Upon information and belief, defendant USA Vape Hardware, LLC does business under the name USA Vape Lab. USA Vape Hardware, LLC is a Delaware limited liability company with its principal place of business at 15572 Commerce Lane, Huntington Beach, California 92649 or 7351 Garden Grove Blvd., Suite A, Garden Grove, CA 92841. Upon information and belief, none of the members of USA Vape Hardware, LLC are citizens of New York State.

7.      Upon information and belief, defendant The Schwartz E Liquid does business under the name USA Vape Lab. The Schwartz E Liquid is a California corporation with its principal place of business at 7351 Garden Blvd., Suite A, Garden Grove, California 92841. The registration of USA Vape Lab e-liquid products is under The Schwartz E Liquid, FEI Number 3013091104.

8.      Defendant Huy Nguyen is, upon information and belief, a citizen of the State of California, residing at 1458 E. 33rd Street, Signal Hills, California 90755 or 15572 Commerce Lane, Huntington Beach, California 92649. Upon information and belief, Nguyen is the owner and chief executive officer of Defendant USA Vape Hardware, LLC, The Schwartz E Liquid and the entity identified as "USA Vape Lab." Nguyen is the owner of registered trademarks for the marks USA VAPE LAB, THE SCHWARTZ PREPARE TO VAPE YOGURT, among others.

Jurisdiction and Venue

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district and the Defendants are subject to personal jurisdiction in this district. In addition, the operative agreement (identified below) contains a Forum Selection provision in which the parties agreed that "any dispute arising out of or relating to this Agreement will be adjudicated in the State of New York."

FIRST CLAIM FOR RELIEF
(Breach of Contract Against USA Vape Lab)

11.     TIG repeats and realleges the allegations in paragraphs 1-10.

12.     On March 1, 2018, TIG and USA Vape Lab entered into a three-year "USA Vape Lab B2B Loyalty Program Agreement" (the "Agreement"). (A copy of the Agreement is annexed hereto at Exhibit A.) The Agreement provides that TIG will provide USA Vape Lab consulting design, ongoing management and fulfillment of USA Vape Lab's B2B Loyalty Program. The Loyalty Program generally involved TIG providing a platform whereby USA Vape Lab sales representatives/retail vendors sign up to participate in a loyalty program and receive Reward Points based upon the amount of sales they make of USA Vape Lab products.

13.     Pursuant to Section VII(b) of the Agreement, USA Vape Lab agreed to pay TIG for all Reward Points issued at $0.10 per Reward Point. Further, the Agreement provides that "Reward Point costs will be charged to USA Vape Lab as issued to each participant's account and are non-refundable."

14.     The participants can then redeem their earned Reward Points through TIG for selected merchandise available through TIG's merchandise catalog and/or on TIG's website.

Each Reward Point had a redemption value of $0.10 toward the redemption of available merchandise.

15. The Agreement provides that participation will be open to 300-400 USA Vape Lab sales representatives/retail vendors from about 100 retail locations and provides for a budget of between $6-$10 million for rewards, to be increased in years 2 and 3 under the Agreement to include E-Liquid products.

16. The Agreement provides two payment provisions:

    (i) USA Vape Lab will pay TIG a one-time fee of $20,000 for the Program Design and Development; and

    (ii) USA Vape Lab will pay TIG a Management & Administration fee of $4,000 per month for up to 400 participants in the Loyalty Program.

17. The Agreement provides at Section X that if the Agreement were canceled within the first year by USA Vape Lab, TIG would be entitled to nine months of the Management & Administration fees.

18. On April 12, 2018, USA Vape Lab agreed in writing with TIG that participation in the Loyalty Program would be expanded to 2,500 sales representatives and 400 stores and agreed to increase the monthly administrative fee from $4,000 to $12,500. (A copy of this agreement is annexed hereto at Exhibit B.)

19. USA Vape Lab was aware, and was informed by TIG, that as part of its benefits under the Agreement, TIG would be earning money from the redemption of Reward Points for merchandise under the Loyalty Program. Specifically, as is typical in the industry, as a result of TIG's buying power and relationship with merchandise vendors, TIG is able to purchase the merchandise offered for a wholesale, discounted price off of the manufacturer's stated price in

the rewards catalog. Accordingly, when participants redeem Reward Points for merchandise at the stated manufacturer's price, TIG would earn money based upon the difference between the stated price and its negotiated wholesale price.

20. Accordingly, TIG expected to earn approximately 25% of the non-refundable amounts paid by USA Vape Lab for the Reward Points issued.

21. TIG and USA Vape Lab expected that during the first year of the Agreement, the expected money earned by TIG through the redemption of Reward Points would be approximately $1,500,000 to $2.500,000, based upon USA Vape Lab's projected Reward Budget of $6-$10 million as stated in the Agreement.

22. Because USA Vape Lab was so pleased with TIG's program design and value, on April 15, 2018, USA Vape Lab not only expanded the Loyalty Program from 100 stores to all 400 stores, but also increased the Reward Budget by 20% to include Store Owner/Sales Managers.

23. As provided in the Agreement, this Reward Budget was also expected to increase based upon inclusion of USA Vape Lab's popular Naked 100 products. USA Vape Lab indicated to TIG that the Reward Budget for years 2 and 3 under the Agreement should at least double.

24. TIG completed the Consulting Design and Development of the Loyalty Program and was paid the $20,000 Consulting Design and Development fee by USA Vape Lab.

25. The Loyalty Program launched live on March 29, 2018. On April 15, 2018, USA Vape Lab sent a mass email blast to its sales representations/retail vendors touting them to sign up to "Win Up to $10 million in rewards." (A copy of this email is annexed hereto at Exhibit C.)

26. As a result of USA Vape Lab's call to action in its email blast, seventy sales representatives/retail vendors enrolled in the Loyalty Program and their information was sent by USA Vape Lab to TIG on April 27, 2018.

27. After the Loyalty Program had launched, on May 8, 2018, USA Vape Lab informed TIG that USA Vape Lab had made the decision to "freeze all of our pending projects" and informed TIG to stop the Loyalty Program. This decision was made out of convenience for USA Vape Lab. There was no cause to terminate the Agreement and USA Vape Lab never informed TIG that USA Vape Lab was canceling the Agreement for cause or for any reason related to TIG. (A copy of this May 8, 2018 email is annexed hereto at Exhibit D.)

28. At the time of cancelation, no Reward Points had been awarded to participants in the Loyalty Program.

29. The Agreement provides at Section VII(B) that in the event the Loyalty Program/Agreement were canceled by USA Vape Lab after its launch, USA Vape Lab will pay TIG an agreed-upon early cancelation fee calculated as follows:

> Reward Payout Budget Reconciliation: If at the conclusion of each 12 month period starting with April 1, 2018, less than $3,000,000 has been awarded in Reward Points, then 25% of the difference will be due to TIG and billed to USA Vape Lab. If cancelled in the first 12 month period starting April 1, 2018 (Yr 1) the 25% Reward Payout Budget Reconciliation will only apply to the $3M Yr 1 threshold, not Yr 2 or 3.

30. USA Vape Lab had insisted upon this provision and the calculation of the agreed-upon fee. At the last minute before the parties' executed the Agreement, the terms of this provision were negotiated down by USA Vape Lab from 25% of $6 million to 25% of $3 million, expressly "in case [USA Vape Lab] had to cancel the program due to FDA audit on Vape."

7

31.     The early cancelation fee is reasonable and was agreed upon by the parties at arms-length because actual damages would be difficult to calculate given, among other things, the uncertainty of the number of participants/Reward Points; the fee was consistent with the loss that could be expected at the time the parties' entered into the Agreement given the anticipated number of participants and the budget projections (and increased projections) provided by USA Vape Lab; and the fee was otherwise neither unconscionable nor contrary to public policy.

32.     When USA Vape Lab unilaterally decided to "freeze all of [its] pending projects," it expressly based this position on the representation that "due to the clear and identified risks we are facing due to the increased attention and regulation that the FDA is placing not only on our company, but on our industry as a whole." This representation, however, was not only exactly what USA Vape Lab purportedly contemplated at the time it negotiated the agreed-upon early cancelation fee, but is also untrue and pretextual.

33.     By this time, the FDA had already had active involvement with e-cigarettes and related products and had already expressed its concern over imposing some controls over the manufacture, distribution and selling of these products.  On July 28, 2017, the FDA issued a News Release announcing that it "intends to develop product standards to protect against known public health risks such as electronic nicotine delivery systems (ENDS) battery issues and concerns about children's exposure to liquid nicotine." Notwithstanding this announcement, the FDA stated that any enforcement policies would not occur until after "applications for non-combustible products such as ENDS or e-cigarettes [were] submitted by August 8, 2022" and that it "expects that manufacturers would continue to market products while the agency reviews product applications."

34. Despite USA Vape Lab's representation to TIG that USA Vape Lab was "freezing all of our pending projects," currently on the USA Vape Lab's website there are three sales promotions being run by USA Vape Lab—"Buy 45 Bottles of Naked 100 Salt Flavors ... And Receive a Stand + Device," "Buy Naked 100 E-liquid & Get a USA Vape Lab Display" and "Buy 49 Bottles of Any Naked 100 Flavors and Receive 1 Feather Flag With Your Order."

35. After cancelation of the Agreement, USA Vape Lab also failed to pay the nine months of Management & Administration fees pursuant to Section X of the Agreement.

36. On May 11, 2018 TIG sent an invoice (the "Invoice") to USA Vape Lab for the outstanding amount due under the Agreement of $862,500 consisting of (i) $750,000 [$3,000,000 x 25%] for the agreed-upon early cancelation fee, and (ii) $112,500 for 9 months of Management & Administration fees. (A copy of this Invoice is annexed at Exhibit E.)

37. The Invoice provides that payment is due upon receipt and that late fees of 1 ½% per month would apply.

38. Despite demand, USA Vape Lab refused to pay the Invoice and the amounts owed under the Agreement.

39. TIG has complied in all respects with the Agreement.

40. USA Vape Lab has breached the Agreement by failing to pay the amounts due under the Invoice and the Agreement.

41. As a result of the foregoing, TIG is entitled to recover from USA Vape Lab the sum of $862,500, plus late fees and interest.

42. Alternatively, USA Vape Lab has breached the Agreement by terminating without cause and refusing to pay the agreed-upon early cancelation fee and management fees. As a

9

result, TIG has been damaged in an amount of its profits lost over the term of the Agreement equaling approximately $9,000,000, as to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract Against USA Vape Hardware, LLC)

43.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 39.

44.  Defendant USA Vape Hardware doing business as "USA Vape Lab" entered into the Agreement with TIG. USA Vape Hardware was obligated to perform all of the obligations of "USA Vape Lab" under the Agreement, including all payment obligations.

45.  As result of the foregoing, USA Vape Hardware has breached the Agreement by failing to pay the amounts due under the Invoice and the Agreement.

46.  As a result of the foregoing, TIG is entitled to recover from USA Vape Hardware, LLC the sum of $862,500, plus late fees and interest.

47.  Alternatively, USA Vape Hardware, LLC has breached the Agreement by terminating without cause and refusing to pay the agreed-upon early cancelation fee. As a result, TIG has been damaged in an amount of its profits lost over the term of the Agreement equaling approximately $9,000,000, as to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract Against The Schwartz E Liquid)

48.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 39.

49.  Defendant Schwartz doing business as "USA Vape Lab" entered into the Agreement with TIG. Schwartz was obligated to perform all of the obligations of "USA Vape Lab" under the Agreement, including all payment obligations.

10

50. As result of the foregoing, Schwartz has breached the Agreement by failing to pay the amounts due under the Invoice and the Agreement.

51. As a result of the foregoing, TIG is entitled to recover from Schwartz the sum of $862,500, plus late fees and interest.

52. Alternatively, Schwartz has breached the Agreement by terminating without cause and refusing to pay the agreed-upon early cancelation fee. As a result, TIG has been damaged in an amount of its profits lost over the term of the Agreement equaling approximately $9,000,000, as to be determined at trial.

### FOURTH CLAIM FOR RELIEF
(Breach of Contract Against Huy Nguyen)

53. Plaintiff repeats and realleges the allegations in paragraphs 1 through 42.

54. The Agreement was executed by TIG and Huy Nguyen as "Owner/CEO USA Vape Lab."

55. The Agreement does not identify that "USA Vape Lab" is a corporation, limited liability company, partnership or other legal entity with capacity to contract or that would provide protection from personal liability to Nguyen.

56. Nguyen did not disclose a corporate status of USA Vape Lab at the time he entered in the Agreement. And neither he nor anyone at USA Vape Lab ever informed TIG whether "USA Vape Lab" was a corporation, limited liability company, partnership or other legal entity that could contract in its own name.

57. Upon information and belief, "USA Vape Lab" is not a corporation, limited liability company, partnership or other recognized legal entity and cannot contract it its own name.

11

58.     Nguyen consciously avoided executing the Agreement on behalf of a legal entity and executed the Agreement in his personal capacity.

59.     As a result of the foregoing, Nguyen is personally liable for the performance of "USA Vape Lab" under the Agreement and for the payment of all moneys owed TIG under the Agreement.

60.     As a result of the foregoing, Nguyen is liable to TIG for payment of the $862,500 owed under the terms of the Agreement or all lost profits incurred by TIG for USA Vape Lab's breach of the Agreement equaling approximately $9,000,000, as to be determined at trial.

WHEREFORE, Plaintiff claims the following relief against each of the Defendants:

1.     Contractual damages in the amount of $862,500;

2.     Alternatively, damages for lost profits in the amount of approximately $9,000,000, to be determined at trial;

3.     Late fees, interest and costs;

4.     Such other and further relief as the Court deems just, proper and equitable.

PLAINTIFF

Robert Laplaca (RL4545)
Kristen Rossetti (KR0514)
VERRILL DANA LLP
33 Riverside Avenue
Westport, CT  06880
Telephone:  (203) 222-0885
Facsimile:  (203) 226-8025
Email: rlaplaca@verrilldana.com
krossetti@verrilldana.com

Its Attorneys